UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, ABILENE DIVISION

| | |
|---|---|
| CONTI, LLC,<br>a Delaware limited liability company,<br><br>*Plaintiff*,<br><br>v.<br><br>ARRAY CONSTRUCTION, LLC,<br>a Delaware limited liability company,<br><br>*Defendant*. | Case No.:<br>Hon. |

# PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES** Plaintiff Conti, LLC (hereinafter "Plaintiff" or "Conti"), by and through its attorneys, as and for its Complaint against Defendant Array Construction, LLC ("Defendant" or "ArrayCon") states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Conti is a limited liability company organized and existing under the laws of the State of Delaware.

2. Defendant ArrayCon is a limited liability company organized and existing under the laws of the State of Delaware.

3. The Anson Solar 1 Project is a solar development construction site located at 4211 County Road 185, Anson, Texas 79501 (the "Project").

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and this action is between citizens of different states.

5. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), Conti is a citizen of Delaware because its ultimate member corporation is incorporated in Delaware. However, based upon a diligent search of public records, none of ArrayCon's known members are citizens of Delaware. Therefore, because the members of the limited liability companies are diverse for purposes of diversity jurisdiction, there is complete diversity.

6. Personal jurisdiction over ArrayCon is properly founded on ArrayCon actively conducting businesses within the Northern District of Texas.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and/or (c), in that ArrayCon conducts substantial business within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred and continue to occur within this judicial district. Venue is further proper in this Court pursuant to Tex. Civ. Prac Code 15.011.

## GENERAL ALLEGATIONS

### The Project and the Subcontractor Agreement Between Conti and ArrayCon

8. This dispute relates to the Project.

9. Conti is a nationwide multi-trade general contractor.

10. ArrayCon is a trade subcontractor, specializing in solar energy construction.

11. On May 28, 2020, Conti entered into a Subcontractor Agreement with ArrayCon for a fixed price of $5,650,000.00.[1] *See* Subcontractor Agreement, attached hereto as **Exhibit A.**

12. Under the terms of the Subcontractor Agreement, ArrayCon was to provide all tools, equipment, materials, supervision and manpower to mobilize, unload and stage, install and QC, per the plans and specifications, all NEXTracker racking and Vsun modules for the Project (the "Work").

---

[1] On October 23, 2020, Conti issued Change Order 1, decreasing the contract price to $5,300,000.00. *See* Change Order 1, attached hereto as **Exhibit B.**

13. After executing the Subcontractor Agreement, Conti paid ArrayCon an initial payment and a pay application payment totaling $2,263,456.79. ArrayCon has acknowledged receipt of these payments.

14. Performing the Work for the agreed price was completely and solely the responsibility of ArrayCon.

### ArrayCon's Subcontract with HCS

15. ArrayCon, however, elected, at its own risk, to subcontract certain Work to another subcontractor, HCS Renewable Energy, LLC ("HCS"). Conti has no contractual relationship or other privity with HCS. Conti did not direct ArrayCon to use HCS and did not assume any responsibility for HCS's performance or non-performance of the Work.

16. Additionally, ArrayCon was required by the Subcontract Agreement to get approval from Conti to subcontract ArrayCon's any portion of the Work. ArrayCon did not request nor receive approval to subcontract the Work to HCS, which is in breach of the Subcontract Agreement.

17. Completion of the Work at agreed prices always was and remains the sole and complete responsibility of ArrayCon.

18. To date, ArrayCon has refused to pay HCS for its performance of the Work.

19. On October 22, 2020, as a direct consequence of ArrayCon's failure to pay HCS, HCS filed an Affidavit of Mechanics and Materialmen's Lien (the "HCS Lien") claiming a lien in the total amount of $5,003,633.67.

## ArrayCon's Breach of Contract with Conti

20. Irrespective of ArrayCon's opinion as to HCS's performance under its subcontract with HCS or the legitimacy of the HCS Lien, ArrayCon owes Conti an explicit contractual duty to discharge any lien filed on the Project.

21. Specifically, pursuant to Section 6.7 of the Subcontractor Agreement, ArrayCon expressly agreed that "[i]f any lower tier subcontractor or supplier of Subcontractor files a Claim of Lien at any time, [ArrayCon] shall file a bond to discharge that lien within fifteen (15) days and in the event of its failure to do so Conti may file the bond and [ArrayCon] shall reimburse Conti for the cost of the bond." *See* Ex. A., Section 6.

22. Moreover, under Section 18.1 of the Subcontractor Agreement, ArrayCon was required to "indemnify and hold harmless Conti from and against all claims, damages, losses and expenses, including actual attorney fees, arising out of or resulting from: [ArrayCon's] breach of this Agreement; or, from the Work and caused in whole or in part by any acts or omissions of [ArrayCon], [ArrayCon's] employees or any suppliers or sub-contractors to [ArrayCon]." *See* Ex. A, Section 18.

23. Accordingly, Conti immediately demanded that ArrayCon bond off the HCS Lien pursuant to the Subcontractor Agreement.

24. Nevertheless, in direct breach of the Subcontractor Agreement, ArrayCon refused—and continues to refuse—to bond off the HCS Lien.

25. On November 30, 2020, due to ArrayCon's refusal to bond off the HCS Lien, Conti was forced to bond off the HCS Lien at considerable expense.

26. ArrayCon baselessly contends that it is not obligated to bond off the HCS Lien because it disputes the amount HCS claims is owed. Notwithstanding ArrayCon's opinion on the HCS Lien amount, any dispute over HCS's Lien amount is wholly irrelevant to this claim.

27. ArrayCon's failure to bond off the HCS Lien is a material breach of its Subcontractor Agreement with Conti.

28. Conti demands that ArrayCon issue its own bond for the full amount of the HCS Lien, and any other liens filed by any other ArrayCon Subcontractor for the Work, pursuant to its contractual obligations with Conti.

29. Conti also demands that ArrayCon reimburse Conti for the cost of the bond that it secured to bond off the HCS Lien.

### ArrayCon's Wrongful Claim of Lien on the Project

30. On February 10, 2021, ArrayCon recorded a claim of lien against the Project property in its own name, in the amount of $3,036,543.00 (the "ArrayCon Lien"). *See* ArrayCon Lien Affidavit and Claim, attached hereto as **Exhibit C**.

31. The ArrayCon Lien is improper because it overstates the value of what it is owed, particularly when viewed in conjunction with the HCS Lien. Indeed, the two liens total over $8,000,000.00, even though the fixed price for the Work was $5,300,000.00.

32. ArrayCon filed the ArrayCon Lien knowing that it was false.

33. Indeed, because ArrayCon filed the ArrayCon Lien with known improper amounts included in the lien amount and using an improper method to calculate its lien amount, ArrayCon filed the ArrayCon Lien in bad faith and the ArrayCon Lien should be discharged in its entirety as invalid.

### COUNT I – BREACH OF CONTRACT / SPECIFIC PERFORMANCE

34. Conti re-alleges Paragraphs 1 through 32 as if fully set forth herein.

35. Conti and ArrayCon entered into a valid written Subcontractor Agreement.

36. Conti has performed, and continues to perform, all duties under the Subcontractor Agreement and has fulfilled its obligations to ArrayCon.

37. Pursuant to Section 6.7 of the Subcontractor Agreement, ArrayCon expressly agreed that "[i]f any lower tier subcontractor or supplier of Subcontractor files a Claim of Lien at any time, [ArrayCon] shall file a bond to discharge that lien within fifteen (15) days and in the event of its failure to do so Conti may file the bond and Subcontractor shall reimburse Conti for the cost of the bond." Ex. A., Section 6.

38. ArrayCon's failure to bond off the HCS Lien on the Project is a material breach of the Subcontractor Agreement.

39. The remedy at law is plainly inadequate.

40. Accordingly, Conti demands that ArrayCon issue its own bond for the full amount of the HCS Lien, and any other liens filed by any other ArrayCon Subcontractor for the Work, pursuant to its contractual obligations.

WHEREFORE Plaintiff Conti, LLC respectfully requests this Court to enter an order directing Array Construction, LLC to issue its own bond for the full amount of the HCS Lien on the Project, pursuant to Array Construction, LLC's contractual obligations.

**COUNT II – BREACH OF CONTRACT / INDEMNITY / SPECIFIC PERFORMANCE**

41. Conti re-alleges Paragraphs 1 through 39 as if fully set forth herein.

42. Conti and ArrayCon entered into a valid written Subcontractor Agreement.

43. Conti has performed, and continues to perform, all duties under the Subcontractor Agreement and has fulfilled its obligations to ArrayCon.

44. Pursuant to Section 18.1 of the Subcontractor Agreement, ArrayCon was required to "indemnify and hold harmless Conti from and against all claims, damages, losses and expenses,

including actual attorney fees, arising out of or resulting from: [ArrayCon's] breach of this Agreement; or, from the Work and caused in whole or in part by any acts or omissions of [ArrayCon], [ArrayCon's] employees or any suppliers or sub-contractors to [ArrayCon]." *See* Ex. A, Section 18.

45. ArrayCon's failure to bond off the HCS Lien on the Project is a material breach of the Subcontractor Agreement.

46. ArrayCon is contractually obligated to indemnify and hold harmless Conti against any and all damages resulting from ArrayCon's breach, including the HCS Lien.

47. The remedy at law is plainly inadequate.

48. Accordingly, Conti demands that ArrayCon issue its own bond for the full amount of the HCS Lien, and any other liens filed by any other ArrayCon Subcontractor for the Work, pursuant to its contractual obligations.

WHEREFORE Plaintiff Conti, LLC respectfully requests this Court to enter an order directing Array Construction, LLC to issue its own bond for the full amount of the HCS Lien on the Project, pursuant to Array Construction, LLC's contractual obligations.

## COUNT III – BREACH OF CONTRACT / COMPENSATORY DAMAGES

49. Conti re-alleges Paragraphs 1 through 47 as if fully set forth herein.

50. Conti and ArrayCon entered into a valid written Subcontractor Agreement.

51. Conti performed, and continues to perform, all duties under the Subcontractor Agreement and fulfilled its obligations to ArrayCon.

52. Pursuant to Section 6.7 of the Subcontractor Agreement, ArrayCon expressly agreed that "[i]f any lower tier subcontractor or supplier of [ArrayCon] files a Claim of Lien at any time, [ArrayCon] shall file a bond to discharge that lien within fifteen (15) days and in the event of its

failure to do so Conti may file the bond and [ArrayCon] shall reimburse Conti for the cost of the bond." Ex. A, Section 6.

53. ArrayCon's failure to discharge the HCS Lien on the Project is a material breach of the parties' contract.

54. Additionally, ArrayCon was required by the Subcontract Agreement to get approval from Conti to subcontract any portion of the Work. ArrayCon neither requested nor received approval to subcontract the Work to HCS, which is in breach of the Subcontract Agreement.

55. Due to ArrayCon's material breach of the parties' contract by refusing to bond off the HCS Lien, Conti was forced to bond off the HCS Lien at considerable expense.

56. As a direct, foreseeable, and consequential result of ArrayCon's breach, Conti has suffered damages.

WHEREFORE Plaintiff Conti, LLC respectfully requests this Court to enter a judgment in Conti's favor and against Defendant Array Construction, LLC in excess of $8,000,000.00, in addition to pre-judgment interest, statutory interest, costs, reasonable attorneys' fees, and any other relief this Court deems just and appropriate.

## COUNT IV – MISAPPLICATION OF TRUST FUNDS
## TEX. PROP. CODE § 162

57. Conti re-alleges Paragraphs 1 through 55 as if fully set forth herein.

58. Conti and ArrayCon entered into a valid written Subcontractor Agreement for a fixed price of $5,650,000.00.[2]

59. After executing the Subcontractor Agreement, Conti paid ArrayCon $2,263,456.79.

60. This payment was a trust fund made to a subcontractor under a construction contract for the improvement of specific real property in Texas. TEX. PROP. CODE § 162.001(a).

---

[2] On October 23, 2020, Conti issued Change Order 1, decreasing the contract price to $5,300,000.00. *See* Ex. B.

61. ArrayCon received the trust fund and has control or direction of trust fund, and is therefore the trustee of the trust fund. Tex. Prop. Code § 162.002.

62. Upon information and belief, ArrayCon acted with intent to defraud Conti by failing to maintain a construction account record. Tex. Prop. Code §§ 162.005(1)(A), 162.007.

63. Upon information and belief, ArrayCon acted with further intent to defraud Conti by retaining, using, disbursing, or otherwise diverting the trust fund with the intent to deprive the beneficiaries of the trust fund. Tex. Prop. Code § 162.005(1)(B).

64. Upon information and belief, ArrayCon has misapplied the trust fund by intentionally or knowingly or with intent to defraud, directly or indirectly, retaining, using, disbursing, or otherwise diverting the trust fund without first fully paying all current and past due obligations incurred by ArrayCon to the beneficiaries of the trust fund, including HCS. Tex. Prop. Code § 162.131.

WHEREFORE Plaintiff Conti, LLC respectfully requests this Court to enter a judgment in Conti, LLC's favor and against Defendant Array Construction, LLC in excess of $8,000,000.00, in addition to pre-judgment interest, statutory interest, costs, reasonable attorneys' fees, and any other relief this Court deems just and appropriate.

Dated: February 26, 2021                        Respectfully submitted,

                                                **WICK PHILLIPS GOULD & MARTIN LLP**

                                                */s/ Bryan J. Wick*
                                                Bryan J. Wick
                                                Texas Bar No. 24003169
                                                bryan.wick@wickphillips.com
                                                Noah H. Nadler
                                                Texas Bar No. 24065806
                                                noah.nadler@wickphillips.com

        3131 McKinney Avenue, Suite 500
        Dallas, Texas 75204
        Telephone: 214.692.6200
        Facsimile:  214.692.6255

        **COUNSEL FOR PLAINTIFF**


        **MCDONALD HOPKINS PLC**

        */s/ John E. Benko*
        John E. Benko (Michigan Bar No. P58874)
        Mitchell A. Capp (Michigan Bar No. P84917)
        39533 Woodward Avenue, Suite 318
        Bloomfield Hills, MI  48304
        Phone:  (248) 220-1352
        Email:  jbenko@mcdonaldhopkins.com
            mcapp@mcdonaldhopkins.com

        **NON-ADMITTED MICHIGAN COUNSEL FOR PLAINTIFF**